**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 29 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

JERRY LEE ROBINSON,

　　　　Petitioner-Appellant,

v.

ATTORNEY GENERAL OF THE
STATE OF KANSAS,

　　　　Respondent-Appellee.

No. 01-3030
(D.C. No. 98-CV-3026-DES)
(D. Kan.)

---

**ORDER AND JUDGMENT** *

---

Before **HENRY** , **ANDERSON** , and **BRISCOE** , Circuit Judges.

---

　　　After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore

ordered submitted without oral argument.

---

\*　　　This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Petitioner Jerry Robinson, a state prisoner, appeals the district court's denial of his 28 U.S.C. § 2254 petition for writ of habeas corpus on his claim that the admission of his videotaped confession into evidence violated his right to a fair trial. We exercise jurisdiction over the appeal of this issue, pursuant to 28 U.S.C. § 1291, and affirm. Additionally, we deny Robinson's request for a certificate of appealability (COA) on his claim of prosecutorial misconduct.

In 1995, Robinson was convicted after a jury trial in Franklin County, Kansas, of second-degree murder. The court sentenced him to a 55-month term of imprisonment, a downward departure from a maximum 77-month term, based on Robinson's young age (fourteen-years-old at the time of the killing) and the fact that the victim, an adult male, was the initial aggressor. Robinson appealed the conviction, which was affirmed by the Kansas Supreme Court in *State v. Robinson*, 934 P.2d 38 (Kan. 1997).

On January 28, 1998, Robinson filed his petition for federal habeas relief, in which he made two constitutional claims. Robinson's habeas arguments, both of which had been considered and rejected by the Kansas Supreme Court, are that the fundamental fairness of his trial was affected by: (1) an improper admission of his videotaped confession and (2) the prosecutor's inaccurate reference to him as a gang member. The federal district court denied relief, and subsequently granted a COA on the first issue, but denied COA on the second.

**Admission of the videotaped confession**

Because Robinson's habeas petition was filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), it is governed by AEDPA provisions. *Wallace v. Ward*, 191 F.3d 1235, 1240 (10th Cir. 1999), *cert. denied*, 530 U.S. 1216 (2000). Under the AEDPA standard of review, if a petitioner's claim was adjudicated on its merits by the state courts, he is entitled to relief only by establishing that the state-court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id*. § 2254(d)(2). In other words, we may grant Robinson habeas relief only if we were to find "the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law; decided the case differently than the Supreme Court has on a set of materially indistinguishable facts; or unreasonably applied the governing legal principle to the facts of [Robinson's] case." *McCracken v. Gibson,* No. 00-5127, 2001 WL 1203008 (10th Cir. Oct. 10, 2001) (quotation omitted).

Robinson's claim is that his videotaped confession should not have been admitted at trial because the statement was taken in disregard of the Supreme Court's holding in *Michigan v. Mosley*, 423 U.S. 96, 104 (1975), which requires

-3-

police officers to "scrupulously honor[]" a suspect's request to remain silent. The relevant facts can be briefly stated. [1]

Robinson was convicted of killing a man by striking him on the head with a golf club after an altercation in a public park between Robinson's friends and the victim. After seeing that the club was embedded in the victim's skull, Robinson ran home, changed his clothes, and returned to the crime scene with his mother and his mother's long-term live-in boyfriend. At the park, he approached Detective Greg Davis, who considered Robinson an eyewitness, not a suspect.

In response to Davis's questions, Robinson described the escalating violence between his friends and the victim. Then Robinson said "'I ran up behind the guy and hit him with a golf club.'" *Robinson*, 934 P.2d at 51. Upon hearing this statement, Davis advised Robinson and his mother of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). Robinson's mother stated that her son would not answer any more questions. Davis discontinued his questioning, but asked Robinson to stay at the park. Robinson, his mother, and his mother's boyfriend went to their van and waited there.

About a half-hour later, Rick Geist, another police officer, arrived at the park and contacted Robinson. Geist knew that Robinson had already made an oral statement, although he did not know that Robinson's mother had invoked his

---

[1]     A full description of the facts is provided in *Robinson*, 934 P.2d at 42-43.

*Miranda* rights. Geist drove Robinson and his mother's boyfriend to the police station where Robinson, in the boyfriend's presence, was again informed of his *Miranda* rights. Robinson indicated his understanding of his rights, signed the waiver form, and agreed to speak with the officers. Robinson's mother, who had taken her own mother home, reached the police station before any substantive questions were asked. When she joined the others, she was told that her son had agreed to speak with the police. During the interview, which was videotaped, Robinson gave an account of the killing which was consistent with his earlier statement, but more detailed. His mother did not object to the questioning.

A videotape of the interrogation was admitted at trial over Robinson's objection. In his direct criminal appeal, Robinson maintained that the videotape was inadmissible because the questioning had occurred after his mother's assertion of his right to remain silent, in contravention of *Mosley*, in which the Supreme Court dealt with the question of "when is it permissible for police officers to initiate questioning or interrogation of a person in custody after that person has exercised [his] right to remain silent." *United States v. Glover*, 104 F.3d 1570, 1580-81 (10th Cir. 1997) (italics omitted). In *Mosley*, the Court concluded that there was no violation of *Miranda* because (1) at the time the defendant invoked his right to remain silent, the questioning ceased; (2) a substantial interval, of two hours, had passed before the second interrogation; (3)

the defendant was given a fresh set of Miranda warnings; and (4) the subject of the second interrogation was unrelated to the first. *Mosley*, 423 U.S. at 104-05.

In addressing Robinson's contention, the Kansas Supreme Court discussed *Mosley* at length. The Kansas court observed that the "Court's analysis placed great emphasis upon the fact that Mosley had received *Miranda* warnings before each interview." *Robinson*, 934 P.2d at 52 (quoting *State v. Lewis*, 899 P.2d 1027, 1033 (Kan. 1995)). "'The critical safeguard . . . is a person's right to cut off questioning.'" *Id*. at 53 (quoting *Mosley*, 423 U.S. at 103) (further quotation omitted). To summarize, the Kansas court stated:

> Based on *Miranda* and *Mosley*, if a defendant invokes his or her right to remain silent, the interrogation must stop immediately and the right must be scrupulously honored. This does not mean an interrogation resumed at a later time is invalidated if the defendant knowingly and voluntarily waived the right to be silent at this later time and the defendant's right to be silent was scrupulously honored while it was invoked.

*Id.* at 54.

Turning to the case before it, the Kansas Supreme Court then reviewed the circumstances surrounding Robinson's waiver of his *Miranda* rights, including the fact that he was a juvenile. It noted that the adult persons closest to Robinson, who appeared to be of at least average intelligence, were present at all critical junctures; that, through their experience in the park, these adults were aware that a request to exercise the right to remain silent would be honored; that Robinson

-6-

was given his *Miranda* rights prior to the second interrogation; and that the questioning in the police station was done in good faith. After noting these facts, the state court determined that the confession was properly admitted and that, "[e]ven if the admission of the second confession were considered error, it would be harmless error" because Robinson had made essentially the same incriminating statements at the park. *Robinson*, 934 P.2d at 54.

In this federal habeas action, Robinson asserts that the state court unreasonably applied the *Mosley* principles to the facts of his case. He believes that the result should have been different because, unlike the situation in *Mosley*, his interrogation was reinitiated only one hour after he invoked his right to remain silent and he was questioned about the same crime. Robinson's suggestion that the *Mosley* facts amount to "a bright-line test to determine whether a suspect's right to cut off questioning was 'scrupulously honored'" has been rejected by other federal circuit courts of appeal. *Weeks v. Angelone*, 176 F.3d 249, 268 (4th Cir. 1999). Like the Kansas Supreme Court, these courts have concluded that "the touchstone is whether a 'review of the circumstances' leading up to the suspect's confession reveals that his 'right to cut off questioning was fully respected.'" *Id.* (citing *Mosley*, 423 U.S. at 104); *see also United States v. Schwensow*, 151 F.3d 650, 659 (7th Cir. 1998).

Having carefully reviewed the record on appeal, including the state trial and appellate records, we are convinced that the Kansas Supreme Court's decision upholding the trial court's admission of Robinson's videotaped confession was not based on an unreasonable application or interpretation of *Mosley*.[2] Robinson is not entitled to habeas relief on his claim that the videotaped confession was obtained in violation of his right to remain silent.

## Prosecutorial Misconduct

Robinson also seeks a COA to pursue his claim that his right to a fair trial was violated by the prosecutor's references to him as a member of a gang, without any basis in fact and over sustained objections. To be entitled to a COA, Robinson must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). He can do so by establishing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quotation omitted).

Prosecutorial misconduct warrants habeas relief only if it so infects the trial process as to make the resulting conviction a denial of due process. *Mayes v.*

---

[2]     Because of this conclusion, we do not conduct the harmless-error analysis advocated in Robinson's brief.

*Gibson*, 210 F.3d 1284, 1293 (10th Cir.), *cert. denied*, 531 U.S. 1020 (2000). Robinson has failed to demonstrate that the prosecutor's references to Robinson's friends as a "gang" rise to the level of a due process violation. Here, the trial court sustained defense counsel's objections to the references and instructed the jury to disregard them. Further, the jury was informed that there was no proof that Robinson was involved with an organized gang. We therefore deny Robinson's request for a COA.

For the reasons stated above, Robinson's request for a certificate of appealability on the issue of prosecutorial misconduct is DENIED, and that portion of the appeal is DISMISSED. The remainder of the judgment of the district court is AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge